KUNGLIG JARNVAGSSTYRELSEN v. DEXTER & CARPENTER, Inc., et al.

(District Court, S. D. New York. July, 1924.)

1. Set-off and counterclaim ⬅➡2—One filing action accepts consequences, including relief by counterclaim.

One filing an action accepts consequences which it may have in place where it is filed, including such affirmative relief by way of counterclaim as is there allowed.

2. International law ⬅➡10—Claim of immunity not recognized, unless by diplomatic intervention, where neither sovereign nor ambassador is party.

Where party before court claiming immunity from suit is neither sovereign nor ambassador, claim will not be recognized, unless by diplomatic intervention.

At Law. Action by the Kunglig Jarnvagsstyrelsen, also known as the Royal Administration of the Swedish State Railways, against Dexter & Carpenter, Inc., and others. On motion to strike out certain allegations in the replication. Motion granted.

See, also, 299 Fed. 991.

Sur motion to strike out certain allegations in the replication to a counterclaim at law. The action was brought by a Swedish corporation, and the jurisdiction of this court depends on diverse citizenship. The declaration alleged that the defendant made a contract with a Swedish corporation other than the plaintiff to sell it coal; that the plaintiff through a Swedish bank advanced funds to pay for the coal, which should have been paid out only on the presentation of proper policies of insurance; that the defendant presented improper insurance papers and got the money unlawfully; that the cargoes, though shipped, were lost, and the plaintiff has recovered no insurance. It demanded judgment for the purchase price advanced on the insufficient insurance.

The counterclaim alleged that the contract set up in the declaration was for the sale of coal, and was made between the defendant and the other Swedish corporation, "representing the plaintiff"; that the plaintiff repudiated it when partially completed, because the price of coal had fallen. It demands damages for the breach.

⬅➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In the replication the plaintiff "appears specially" and alleges that it "is an agency" of the king of Sweden, and that the counterclaim "is in substance and effect an action" against him, and not maintainable here; that the plaintiff does not consent to try out the counterclaim, and protests against it "as an invasion of the immunity" of the sovereign. These are the allegations which the defendant wishes to have stricken out. The replication also contains traverses of the allegations of the answer. It is verified by the attorney.

Gustav Lange, Jr., of New York City, for plaintiff.
Wharton Poor, of New York City, for defendants.

LEARNED HAND, District Judge (after stating the facts as above). If the immunity of a foreign sovereign from suit depended merely upon the fact that he was such a sovereign, or if the immunity of his agent depended merely upon his agency, the issue tendered by the replication would be good, barring some possible waiver by earlier conduct in the cause. But if the immunity depends, not alone upon that, but upon its assertion, then the issue becomes immaterial, until some one authorized to assert the sovereign's privilege comes into court and does so.

[1] In the case at bar the plaintiff is a corporation, and as such prima facie a party, like any one else. When it brings suit in a court administering a procedure which admits of the filing of counterclaims, it is also prima facie subject to the jurisdiction of that court as respects any counterclaims permitted under its practice. To file the action is to accept the consequences which it may have in the place where it is filed, including such affirmative relief as is there allowed. Every one agrees to this when the plaintiff is a private party; it applies, of course, to the plaintiff at bar, which is a corporation, except for the alleged immunity.

[2] Conceivably it might have been the law that the mere proof that a party was a foreign sovereign would, without more, establish his immunity, and the adversary party would have to show that he had consented to be sued, or the court would refuse to entertain the suit. But on principle it would appear that the sovereign ought to assert the claim, since the bare fact of his sovereignty does not disturb the existence of those facts upon which jurisdiction depends; i. e., his voluntary presence in court as a party, or the arrest of his goods or of the person of his agent.

In this there might perhaps be a valid distinction in respect of acts occurring within the sovereign's own realm, which cannot be wrongs under his own law, if done at his direction. Acts done elsewhere entail the usual consequences, no matter who is their author, if he be a responsible person under the definition of the lex loci. When a court in such cases declines to treat as justifiable events arising within its own territory, or elsewhere outside the realm of the putative foreign sovereign, it is because of reasons which involve the comity between its own sovereign and the foreign sovereign in question, and not because they do not create the same rights and obligations, as though only private persons were concerned.

To assert the immunity is a step involving possible political consequences, since the sovereign so declares his unwillingness to accept the

decision of the courts of a friendly power. This he may be unwilling to do. On the other hand, it is unfair to private litigants that they should be deprived of a trial through the intervention of one whose authority the sovereign may rightly repudiate, or merely by a suggestion which falls short of a claim of right. Therefore nothing short of a claim made by intervention as a suitor will serve, and obviously this can be done only by some one authorized to assert the sovereign's prerogative.

The law has been of late amply settled by decisions of the Supreme Court, though it chances, irrelevantly in my opinion, that in all the cases the proceedings have been in rem. In Ex parte Muir, 254 U. S. 522, 41 Sup. Ct. 185, 65 L. Ed. 383, the question arose on prohibition, and the actual decision indeed rests upon the fact that under the circumstances the issuance of the writ was discretionary, yet the court said that a claim of immunity in favor of an arrested ship must be made either through direct intervention as a party by the sovereign, by his ambassador or minister, or through the usual diplomatic channels eventuating in a suggestion by the Attorney General. In The Pesaro, 255 U. S. 216, 41 Sup. Ct. 308, 65 L. Ed. 592, the case came up directly on appeal, so that the question of prohibition was not involved. The result was as was foreshadowed in the dicta of Ex parte Muir, supra, and the vessel which had been released was held, because the ambassador did not intervene as a suitor and set up the claim as of right, but contented himself merely with a suggestion for such effect as the court might give it.

The Sao Vicente, 260 U. S. 151, 43 Sup. Ct. 15, 67 L. Ed. 179, turned merely upon the incompetency of a consul general to sue out the writ of certiorari, and may perhaps be distinguished on that account. Yet the question is in fact the same as though it had arisen on an original intervention, and it was so considered by the Circuit Court of Appeals. 281 Fed. 111. See, also, The Sao Vicente, 295 Fed. 829 (C. C. A. 3). Ex parte Transportes Maritimos, 264 U. S. 105, 44 Sup. Ct. 236, 68 L. Ed. ——, turned merely upon the remedy (prohibition), like the actual decision in Ex parte Muir, supra. The same may be said of Ex parte Haussein Lutfi Bey, 256 U. S. 616, 41 Sup. Ct. 609, 65 L. Ed. 1122. But when that case came up on direct appeal in The Gul Djemal, 264 U. S. 90, 44 Sup. Ct. 244, 68 L. Ed. ——, the court again applied the rule in The Pesaro, supra, and The Sao Vicente, supra, and declined to recognize the claim because, although the claimant appeared in the suit, he was thought not properly authorized to claim immunity.

There is no difference between a libel in rem, under which a ship is arrested, and an action in personam against an agent of the sovereign. When the claimant appears and claims the ship, he in fact takes the position of reus, and the suit proceeds between the parties. If the sovereign choose to come forward as claimant, it is enough, as well as if the ambassador appear as such. At least it is said so in Ex parte Muir, supra, though Justice Story doubted it in The Anne, 3 Wheat. 435, 446, 4 L. Ed. 428. But when the party before the court as claimant or as defendant is neither the sovereign nor his ambassa-

dor, it is now the established rule that the claim will not be recognized, unless by diplomatic intervention. That is the situation at bar.

It becomes unnecessary, therefore, to consider the question of the immunity of the king of Sweden in such a venture, or whether the relation between him and the plaintiff was such as to extend to it his immunity, if he have any. Sloan Shipyards v. Emergency Fleet Corporation, 258 U. S. 549, 42 Sup. Ct. 386, 66 L. Ed. 762. The Supreme Court has shown an extreme solicitude to avoid such questions till they are inescapably presented, and lower courts should hesitate even more to do so. The decision of the state court (De Simone v. Transportes Maritimos Do Estado, 199 App. Div. 602, 191 N. Y. Supp. 864; Id., 200 App. Div. 82, 192 N. Y. Supp. 815) is, of course, not controlling as against the cases above cited.

Motion granted.