# JAMES M. PACE

*v.*

# THE PEOPLE OF THE STATE OF ILLINOIS, *ex rel.*
# JOSEPH D. McMEEN.

1. RESIGNATION OF AN OFFICE—*and acceptance thereof.* A county superintendent of schools addressed and presented to the county court of his county, a paper as follows: "The undersigned hereby tenders his resignation as county superintendent of schools." This paper was received by the court, and handed to their clerk to be placed on the files of the court, and was by him so filed. This was a virtual acceptance of the resignation, which was not subject to be revoked by the party presenting it. It was not necessary to enter an order upon the records accepting the resignation in form.

2. COUNTY COURT—*of the number to constitute a quorum.* The county judge and one associate justice constituted a quorum for the purpose of accepting the resignation.

APPEAL from the Circuit Court of Jefferson county; the Hon. JAMES M. POLLOCK, Judge, presiding.

The opinion states the case.

Mr. G. Wright and Mr. C. H. Patton, for the appellant.

Messrs. Tanner & Casey, for the appellees.

Mr. Justice Lawrence delivered the opinion of the Court:

This was an information in the nature of a *quo warranto*, on the relation of Joseph D. McMeen, brought for the purpose of ousting the appellant, Pace, from the office of County Superintendent of Schools in the county of Jefferson. It appears from the record that on the 23d day of June, 1868, Pace, being then the lawful incumbent of said office, and being also a candidate for the office of circuit clerk, presented to the county court, in session on that day, the following paper:

" To the Honorable County Court of Jefferson county, Illinois:

" The undersigned hereby tenders his resignation as County Superintendent of Schools.

"James M. Pace.

"Mt. Vernon, Ill., June 23, 1868."

Two only of the three justices constituting the court, were present, and they both testify that they remonstrated with appellant against his resignation, assigning as a reason that the school records had been destroyed by fire, and that no other person could so well attend to the duties of the office. The appellant replied, that he was a candidate for the clerkship, and people said he already had one important office which he was retaining to fall back upon, if defeated in regard to the other, and that he intended to remove that objection by resigning the office of superintendent. Thereupon one of the judges handed the resignation to the clerk, directing him to file it, and remarking that they were not then prepared to appoint a successor, as one member of the court was absent. The paper was taken by the clerk, endorsed "filed June 23,

28—50th Ill.

1868, by B. E. Patton, D. C.," and placed among the files of the office.

On the 31st of July, 1868, the court again met, and appointed the relator county superintendent. Before this was done, however, and on the 10th day of July, 1868, the appellant had filed in the county clerk's office, another paper, signed by him, in which he declares that he revokes his resignation tendered on the 23d of June, and before the action of the court on the 31st of July, he called their attention to this resignation. On the 25th of June, the appellant published in the county newspaper, over his own signature, an article addressed "To the Public," in which he says, that, having learned objections had been taken to his being a candidate for one office while filling another, he takes this method of making known that he had tendered his resignation as superintendent of schools, and gives a copy of his resignation.

The circuit court, on the hearing, pronounced a judgment of ouster, which the appellant asks us to reverse, urging that his resignation was never accepted, and until so accepted was subject to withdrawal.

We are, however, of opinion that the resignation was complete, and was so understood by the parties at the time. It was wholly unnecessary to enter an order upon the records accepting the resignation in form. The resignation was in fact received by the court, and handed to their clerk to be placed on the files of the court, and was by him so filed. This was a virtual acceptance. Nothing was said about a future revocation, and the only reason why a successor was not at once appointed, was because one member of the court was absent. In two days thereafter, the appellant publishes his address to the people of the county, by which he seeks to have it understood that he has positively resigned. It is true, as urged by counsel, that the letter of resignation uses the phrase " tenders his resignation," and the verb to tender, implies the offer of something for acceptance. Even in that view, as we have already stated, there was a substantial acceptance by the county

court.  But we attach no importance to the use of that word.
We will not be so ungracious to the appellant as to suppose
that he used it with a view to a subsequent revocation, in default
of a formal acceptance by a resolution of the county court
spread upon the records, having, in the meantime, claimed
before the people that he had voluntarily laid aside his office,
and thus removed that objection to his election to another.  If
such was the purpose of appellant, he cannot expect the courts
to aid him in its accomplishment.  But whether or not he
phrased his letter with a view to an ulterior revocation, it is
very clear, from all the testimony, that it was presented by him
as an absolute resignation, to take effect *in presenti*, that it
was so received by the county court, and that he claimed the
popular favor on the ground that he had resigned.  He can
not complain at being required to abide by his own construc-
tion of his own act.   The case of *Gates* v. *Delaware county*, 12
Iowa, 405, is singularly in point.

It is further objected that, as there were present at these
proceedings only the county judge and one of the two associ-
ate justices, the court was not properly organized.  It is
unnecessary to consume time in considering this objection.
The constitution provides that " the county judge, with such
justices of the peace in each county as may be designated by
law, shall hold terms for the transaction of county business."
The act of 1847 provides that any two of the three members
of the county court shall constitute a quorum.  It is objected
that under this law the two justices could sit in the absence
of the county judge, and this would infringe the constitution.
We will decide that question when it arises.  In this case the
county judge was present.

The judgment must be affirmed.

*Judgment affirmed.*